Treat, C. J. It is the duty of the Auditor to apportion the proceeds of the two mill tax, assessed and collected under the provisions of the 15th article of the Constitution, among the holders of state indebtedness presented for the purpose, and draw warrants on the treasury for the payment of their respective shares. He is required to audit the accounts of “all persons authorized to receive money out of the treasury, by virtue of any appropriation made, or to be made by law, particularly authorizing such account;” and “on ascertaining the amount due any person from the treasury, the Auditor shall grant his warrant on the treasury for the sum due." E. S., ch. 13, §7, 8. This general direction clearly embraces the apportionment and distribution of the two mill tax. The fund receivable from this source is expressly devoted to a particular object—the payment of the principal of a certain portion of the state debt. It is specifically appropriated by the Constitution, and by the law passed in pursuance thereof. Laws of 1849, p. 126, §21. But an appropriation by the legislature was unnecessary. The provision of the Constitution is complete in itself, and can be executed without the aid of legislation. Money can only be drawn from the treasury on the warrant of the Auditor, except where the law has prescribed a different mode, as in the case of the interest fund, which is required to be apportioned and paid by the Executive. E. S., 600. In the absence of any law specially designating the officer, by whom the apportionment and distribution of the fund in question are to be made, the general provision of the statute clearly devolves the duty on the Auditor. The duties of the Auditor in respect to this fund are plain and manifest. The 15th article of the Constitution is clear and explicit in its terms. It is capable of but one construction. It levies a two mill tax for the specific purpose of extinguishing the principal of the state indebtedness, except the canal and school debts; and directs that the proceeds shall annually be applied pro rata on the principal of such of the preferred indebtedness, as shall be presented for the purpose. The fund is not to be apportioned generally on the preferred indebtedness, but only on such part thereof, as shall be exhibited to the Auditor for payment. It is to be applied exclusively to the reduction and discharge of the 'principal of the indebtedness, and not on account of the interest. The Auditor has, on the 1st day of January, in each year, to ascertain the amount of the two mill tax actually paid into the treasury, and likewise the amount of unpaid principal on such of the preferred indebtedness, as shall, on that day, be presented to him for payment; and then to declare a dividend on the principal of such indebtedness, so that each holder thereof may receive his proportionate share of the fund in the treasury. He must then issue a warrant on the treasurer, in favor of each holder, payable out of the special fund, and indorse the amount on the bond or other legal evidence of the indebtedness, as so much paid thereon on account of the principal. As before remarked, the proceeds of the tax are to be applied exclusively in the satisfaction of the principal of the indebtedness. This is the express requirement of the Constitution. Mo portion of the fund can be apportioned and paid on account of interest. Interest bonds are necessarily excluded. They cannot be considered as principal, within the true intent and meaning of the constitutional provision. It would not be contended, that interest coupons could be included in the apportionment of the fund. An interest bond is but an amalgamation of several coupons into one obligation. The indebtedness, though changed in form, still retains its distinctive features. It is still a part of the interest of the public debt, as contradistinguished from the principal. The law, authorizing the funding of the interest, shows on its face, that it was not the design to convert the interest into principal. The interest bonds are not payable, and do not bear interest, until 1857. The chief object of the law was to avoid the confusion and inconvenience resulting from the large quantity of coupons, identical in number and amount, and often detached from the obligations to which they belonged. Laws of 1847, p. 161. Besides, specific provision, however inadequate, had already been made for the payment of the interest. R. S., 600. It may possibly be, that interest bonds, after their maturity, should be regarded as part of the principal of the public debt, and entitled to share in the proceeds of the two-mill tax. But upon that question no opinion is now intimated. Mor can the surplus revenue deposited with this State, under the provisions of the act of Congress, of the 23d of June, 1836, be now considered as an indebtedness on the part of the State, that can be presented for payment out of this fund. It was expressly provided, by the act of Congress, of the 2d of October, 1837, that the surplus revenue previously distributed, should “remain on deposit with the States, until otherwise directed by Congress.” That act continues in full force. There must, therefore, be some affirmative action by Congress, before this deposit can be recalled. Until such legislation is had, the general Government cannot present the certificates of deposite, and claim to participate in the distribution of the fund in question. The Governor is not in any sense the holder of these certificates of deposit. If they could be presented for payment, it would be the right of the United States, and not of the State, to designate the agent to whom the dividend should be paid. The creditor has the option to present his debt for payment or not. The State cannot appoint an agent to represent its creditors, much less to divert any part of the fund from its intended destination. It is not even competent for the Legislature to direct a portion of the fund to be reserved from the apportionment, for the benefit of creditors who may fail to present their demands, on the day indicated by the Constitution. So much of the act of the 12th of February, 1849, as requires the amount of the surplus revenue deposited with the State, to be taken into considereration, in the apportionment of the proceeds of the two-mill tax, and the dividend thereon to be paid to the Governor, is a clear and palpable violation of the Constitution. The legislature might with equal propriety have directed the whole of this tax to be annually added to the school fund, or distributed among the several counties in the state. Let a peremptory mandamus issue pursuant to the prayer of the petition. Mandamus awarded.